# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| THE WILLIAM POWELL COMPANY, | |
| *Plaintiff*, | Case No. 1:21-cv-522 |
| vs. | Judge Jeffery P. Hopkins |
| AVIVA INSURANCE LIMITED, et al., | Magistrate Judge Stephanie K. Bowman |
| *Defendants*. | |

## ORDER SUSTAINING OBJECTIONS TO REPORT AND RECOMMENDATION AND GRANTING MOTION TO DISMISS (DOC. 56)

This matter is before the Court on the Report and Recommendation (R&R) issued by Chief Magistrate Judge Bowman on September 11, 2024. Doc. 118. The R&R recommends that Aviva Insurance's ("Aviva" or "Defendant") Motion to Dismiss, Doc. 56, be denied. Aviva has filed objections. Doc. 119. Plaintiff The William Powell Company and Cross-Claimants[1] (collectively, "Plaintiff" or "Powell") have responded to those objections, Doc. 120, and Aviva has filed a reply in support of its objections. Doc. 121. For the reasons explained below, Aviva's objections are **SUSTAINED**. Defendant's Motion to Dismiss (Doc. 56) is **GRANTED**.

### I. BACKGROUND

This is a dispute over insurance coverage for liabilities associated with asbestos, a hazardous material which was used extensively in a variety of industries throughout the United States during the past several decades that is believed to be the cause of death or serious

---

[1] United States Fire Insurance Company, Great American Insurance Company of New York, Great American E&S Insurance Company, and Hartford Accident and Indemnity Company.

illness among multiple workers involved in the manufacturing of a multitude of products containing that material. Between 1955 and 1977, Powell, a manufacturer of industrial valves, bought insurance policies against liabilities associated with its use of asbestos. Docs. 1, 118. The name of the insurer listed on the policies it purchased is General Accident Fire and Life Assurance Corporation, Limited ("General Accident"), which was a U.K. insurance company based in Scotland. Doc. 118, PageID 2030.

In 1981, after the policies in question here were issued, General Accident transferred its U.S. business to Potomac Insurance Company, its wholly-owned American subsidiary, through a domestication and merger agreement. That entity eventually became Bedivere Insurance Company. *Id.* General Accident also underwent several name changes and re-registrations in the past forty years, most recently re-registering as Aviva in 2006. *Id.* at PageID 2036.

The parties do not dispute that Bedivere was responsible for Powell's asbestos coverage—Powell received coverage from Bedivere between 2001 and 2019 for asbestos litigation. *Id.* at PageID 2030. Bedivere, however, ran out of money in 2019 when it remained responsible for significant asbestos liabilities. *Id.* That's when Powell began to look for another company that may be on the hook for its insurance claims and able to pay. It turned to Aviva, suing it and other related insurers in 2021. Doc. 43.[2]

Aviva immediately sought to dismiss the case under Rule 12(b)(2) for lack of personal jurisdiction and under Rule 12(b)(6) for failure to state a claim. Chief Magistrate Judge

---

[2] Powell also named United States Fire Insurance Company, Hartford Accident and Indemnity Company, Great American Insurance Company of New York, Great American E&S Insurance Company, and State Auto Mutual Insurance Company as defendants. These insurers were named as only nominal defendants, as they had made payments under their own policies to Powell and had potential subrogation or contribution claims if Powell recovered from Aviva. Doc. 43, PageID 414.

2

Bowman tendered the Report and Recommendation presently under consideration on September 11, 2024, recommending the Motion to Dismiss be denied. Doc. 118.

Aviva objects. Aviva's objections primarily reiterate the arguments the insurer made in briefing of the initial motion to dismiss. To summarize Aviva's core argument: the insurer claims that Powell never contracted directly with its predecessor General Accident, but instead contracted with its U.S. branch, a legally distinct entity, and that the affiliation between General Accident and its U.S. branch was extinguished in 1981 when General Accident sold its U.S. operations to its subsidiary, Potomac Insurance Company, in a proper domestication transaction approved by regulators in New York and Pennsylvania. *See* Doc. 118, PageID 2038; Doc. 121, PageID 2106.

For the reasons stated below, Aviva's objections are **SUSTAINED** and its Motion to Dismiss (Doc. 56) is **GRANTED**.

## II. STANDARDS OF REVIEW

If a party objects within the allotted time to a report and recommendation, the Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3). Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

Aviva has moved to dismiss the complaint under both Rule 12(b)(2), asserting lack of personal jurisdiction and Rule 12(b)(6), asserting a failure to state a claim on which relief can be granted. Doc. 56. As explained below, the Court concludes that Powell fails to state a claim upon which relief may be granted. Because the claim fails for that reason, the Court need not consider Aviva's jurisdictional arguments.

3

As to the Rule 12(b)(6) standard, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must include "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). This, however, requires "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action," and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Indeed, under the plausibility standard set forth in *Twombly* and *Iqbal*, courts play an important gatekeeper role, ensuring that claims meet a plausibility threshold before defendants are subjected to the potential rigors (and costs) of the discovery process. "Discovery, after all, is not designed as a method by which a plaintiff discovers whether he has a claim, but rather a process for discovering evidence to substantiate plausibly-stated claims." *Green v. Mason*, 504 F. Supp. 3d 813, 827 (S.D. Ohio 2020).

In deciding a motion to dismiss, the district court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir. 2007). In doing so, however, the district court "need not accept as true legal conclusions or unwarranted factual inferences." *Gregory v. Shelby County, Tenn.*, 220 F.3d 433, 446 (6th Cir. 2000).

### III. LAW AND ANALYSIS

4

Aviva asserts that the R&R is contrary to law and to support that assertion reiterates arguments it made in its Motion to Dismiss. Because the Objections largely restate Aviva's arguments presented in its Motion to Dismiss, the Court has distilled those objections to the following two key points of disagreement with the R&R:

- First, Aviva contends that the R&R erroneously concludes that Powell's insurance policies were placed with Aviva's predecessor General Accident, rather than being placed specifically with General Accident's U.S. branch, *see* Doc. 119, PageID 2064; and

- Second, Aviva contends that the R&R fails to consider that General Accident's U.S. Branch domesticated and merged with its subsidiary Potomac in 1981, which transferred all General Accident's U.S. liabilities to Potomac. *See* Doc. 119, PageID 2070; Doc. 121, PageID 2111.

The Court addresses both issues in order.

  A. Policies Placed with General Accident's U.S. Branch

The R&R rejects Aviva's argument that Powell's insurance policies were placed with General Accident's U.S. Branch rather than General Accident itself. As the R&R notes, the name of the insurer listed on the policies is General Accident Fire and Life Assurance Corporation, Limited. Doc. 118, PageID 2030. "On their face, the Policies reflect that they were issued by General Accident . . . with no reference to or hint that they were issued by a wholly distinct entity known as the 'US Branch' or any other entity." Doc. 118, PageID 2039. In concluding that the policies were placed with General Accident, the R&R rejects Aviva's argument that under relevant insurance law it *could not* contract directly with U.S. citizens; only its U.S. branch could do so. *Id.* at PageID 2040. The R&R also rejects Aviva's argument

5

that two New York cases—*Matter of People by Stoddard, Norske Lloyd Ins. Co.* ("*In re Stoddard*"), 242 N.Y. 148 (1926), and *Moscow Fire Ins. Co. v. Bank of New York & Trust Co.*, 280 N.Y. 286 (1939), support Aviva's interpretation of the policies. *Id.* at PageID 2041.

In its Objections, Aviva takes up again its statutory argument, arguing that several provisions of New York Insurance Law (NYIL)—under which General Accident was permitted to operate in the U.S.—"intend[] treatment of GAFLAC USB [U.S. Branch] as a separate legal entity." Doc. 119, PageID 2064. Along these same lines, Aviva asserts: "The NYIL permits alien insurers to operate in the United States by way of U.S. branches," and that those branches "must stand on their own – i.e., be sufficiently capitalized and have sufficient trusteed assets and reserves for the protection of the policyholder." *Id.* at PageID 2065.

Essentially, Aviva argues that whatever Powell's policy *says*, that policy was with General Accident's U.S. branch rather than with the alien insurer itself. *See* Doc. 56, PageID 754. In its Motion to Dismiss Aviva asserts that "GAFLAC [General Accident] established a U.S. branch – GAFLAC USB – pursuant to the NYIL," and Powell's policy was with that U.S. branch. *Id.* Aviva then offers several pieces of evidence to support that claim.

First, Aviva claims that there was no other way for General Accident to do business in the United States—under New York Insurance Law, General Accident was required to operate in the U.S. using a separate corporate structure called a U.S. Branch. Doc. 56, PageID 754 ("GAFLAC could not have conducted the business of insurance in the United States without a U.S. Branch or other statutory permission not relevant here.").

Second, Aviva offers the declaration of Andrew Wilkinson, who is the Director of Technical Claims for Aviva located in the United Kingdom. Wilkinson avers that General

6

Accident, pursuant to New York Insurance Law, established a U.S. branch in or around 1899, and conducted insurance business in the U.S. through that branch until 1981. Wilkinson Decl., Doc. 57, ¶ 2. Attached to that declaration is the domestication agreement reached between General Accident and Potomac Insurance Company (the predecessor to Bedivere). That agreement states: "GAFLAC [General Accident] is engaged in the business of writing insurance and is licensed to do business in the State of New York, and to that end and for many years has maintained a United States Branch, which Branch entered the United States through the State of New York and now maintains an office at Fourth and Walnut Streets, Philadelphia, Pennsylvania 19106, as a separate business unit with a separate set of books and records . . . ." Wilkinson Decl. Ex. A, Doc. 57-1. Also attached to the declaration is an excerpt from the Federal Register following this domestication transaction which states: "General Accident Fire & Life Assurance Corporation, Limited, Perth, Scotland, *a U.S. Branch* . . . domesticated and merged into Potomac Insurance Company, effective December 31, 1981." Wilkinson Decl. Ex. D., Doc. 57-4, PageID 809. (Emphasis added.).

As a third form of proof, Aviva directs attention to reports from A.M. Best's Insurance Reports during the relevant coverage period in dispute in this litigation. Those reports all state that the U.S. Branch of GAFLAC was licensed to operate throughout the U.S. Doc. 56, PageID 754. And as a fourth form of proof, Powell's policies themselves, where legible, provide a Philadelphia business address for the insurer, which was the location of General Accident's U.S. branch. Doc. 72, PageID 1067.

Aviva also offers caselaw support for its argument that Powell contracted with General Accident's U.S. branch, rather than its alien parent, General Accident based in Scotland. Aviva points to the rule established in *In re Stoddard*. There, the New York Court of Appeals

7

considered the propriety of distributing assets of a U.S. branch of an insolvent Norwegian insurer to pay claims on policies issued by the insurer outside of the United States. Determining that the U.S. branch assets could not be used to pay extraterritorial claims, the Court observed:

> [T]he Insurance Law as now written and as an entirety indicates a purpose and policy in dealing with foreign insurance companies doing business in this country which are so definite and plain that they fix upon the words under consideration an interpretation which cannot fairly be avoided. We think that the Legislature in allowing these foreign companies to do business in this State and country intended to treat the domestic agency largely as a complete and separate organization, to place it on a parity with domestic corporations, to supervise it and regulate it as such and to require it by the deposit of prescribed assets to set up within this country a capital corresponding to that of domestic corporations and which should be security for business transacted by it here and not elsewhere.

*In re Stoddard*, 242 N.Y 148, 158–59 (1926).

To summarize this statement so as to highlight its relevance here: when foreign insurers do business in the United States under the New York Insurance Law, their domestic operations are conducted and regulated separately to some degree. Whatever the language of the policy regarding the relationship between the insured and the insurer, New York Insurance Law in fact requires a layer of separation—it requires that the foreign insurer conduct its domestic business "largely as a complete and separate organization." *Id.*

Citing *In re Stoddard*, the New York Court of Appeals made a similar statement in a case decided over a decade later and more to the point called, *Moscow Fire Ins. Co. v. Bank of New York & Tr. Co.*, 280 N.Y. 286, 309 (1939): "The Insurance Law requires that before a foreign insurance corporation is permitted to do business here there must be a definite separation and division of its property and even of its juristic personality." This case also involved preventing a foreign insurer from taking back assets held in the U.S. and was

8

affirmed by the U.S. Supreme Court in *United States v. Moscow Fire Ins. Co.*, 309 U.S. 624 (1940).

The R&R rejects each of the arguments advanced by Aviva on various grounds. Instead, the R&R emphasizes that the language of the policies themselves indicates they were issued by General Accident rather than by its U.S. branch or any other entity. Doc. 118, PageID 2039. The R&R also notes that Powell presented evidence that General Accident had legal authority to do business in Ohio. *Id.* at PageID 2044. As for the A.M. Best reports, the R&R notes that those same reports also listed funds on General Accident's foreign balance sheet as available to cover domestic losses, indicating that industry observers well understood that the foreign insurer was not insulated from its U.S. branch's losses. *Id.*

Further, the R&R attempts to distinguish *In re Stoddard* and *Moscow Fire*, by concluding that these cases "clearly hold only that the [New York Insurance Law] protects the property interests of U.S. citizens over the interests of non-citizens; they most certainly do not stand for the opposite proposition, that an alien insurer may safeguard its reserves (*without any formal separation of corporate structure*) if the funds placed in trust for US policyholders prove insufficient to pay claims." *Id.* at PageID 2042–43. Citing *Colonia Ins., A.G. v. D.B.G. Property Corp.*, No. 89 Civ. 8640, 1992 WL 204376 at *7 (S.D.N.Y. Aug. 10, 1992), the R&R interprets narrowly the cases Aviva relies upon as merely establishing "[a]t most . . . that domestic branches of foreign corporations are considered separate organizations for purposes of distribution of the property of the domestic branches." *Id.* at PageID 2043.

Respectfully, this Court disagrees and finds Aviva's objections on this issue persuasive. The Court concludes that Aviva's authorities do not provide everything Aviva asks—they do not, for example, conclusively show that a policyholder is limited to the trusteed assets of a

9

U.S. branch where that branch is insolvent—but they are adequate for Aviva's present purposes. By way of example, the cases establish that Powell placed the relevant policies with General Accident through General Accident's U.S. branch, which had a meaningfully different "juristic personality," *Moscow Fire*, 280 N.Y. at 309, from the company's foreign operations. Moreover, the cases also make clear that New York Insurance Law required General Accident to keep a certain amount of assets in the United States for the benefit of U.S. policyholders. The Court concludes that Powell's insistence on the significance of the lack of a reference to a "U.S. Branch" on the policies is misguided for present purposes. Powell does not contest that General Accident did business in the United States under New York Insurance Law and through its U.S. branch. It is apparent from the statutory scheme, then, that Powell's policies were with General Accident's U.S. branch, which, at the time the policies were placed, gave Powell the protection of New York insurance regulation, including the requirement that the insurer maintain assets trusteed only for U.S. policyholders. Powell's insistence to the contrary, including its observation that it chose to contract with General Accident rather than with one of its subsidiaries, *see* Doc. 118, PageID 2043, is unpersuasive. Under the relevant statutory scheme then in effect in New York, when Powell placed the insurance policies at issue with General Accident, it placed them with General Accident's U.S. branch.

      B.  General Accident's U.S. Branch Domesticated and Merged with Potomac

Aviva also takes issue with the R&R's analysis of the domestication and transfer of General Accident's U.S. assets to Potomac. Doc. 119, PageID 2070; Doc. 121, PageID 2107–11. Aviva asserts that General Accident's U.S. branch domesticated and merged with Potomac in 1981, and in that transaction properly transferred the liabilities of its U.S. branch

10

to Potomac. The insurer argues further that New York Insurance Law expressly permitted this domestication transaction, which allowed General Accident to transfer *all U.S. liabilities* to Potomac, overriding generally applicable contract law novation principles. Doc. 121, PageID 2108–09. *See also* Doc. 56, PageID 761 ("Policyholder release was not required under the statutory scheme by which [General Accident's U.S. branch] transferred all of its liabilities and assets to and merged with Potomac. . . . Instead, protections for policyholders were and are built into the [New York Insurance Law] domestication statute, which requires [the New York Department of Financial Services] to determine that 'the interests of policyholders and creditors of the United States branch are not materially adversely affected' prior to approving domestication and merger.") (*citing* New York Insurance Law Article XV-A et seq. *and quoting* New York Insurance Law § 7204(b)).

As noted, the R&R reached a contrary conclusion regarding the effect of the domestication agreement. The Magistrate Judge instead concluded that the domestication agreement was "merely the transfer of U.S. assets" and thus could not "insulate[] General Accident from all prior liabilities." Doc. 118, PageID 2049. The R&R further accepted Powell's argument that General Accident could not be relieved of its liabilities under the policies without Powell's consent, observing that "the mere fact that a regulator must approve a domestication agreement is [not] effective to terminate the contractual rights of all policyholders who previously contracted *directly* with the alien insurer, General Accident, without so much as notice to them and without their consent or any type of novation of the transfer of the Policies." *Id.* at PageID 2049–50. The Magistrate Judge concluded that New York Insurance Law was silent on the issue of whether these liabilities were transferred and thus in the R&R "decline[d] to adopt a construction that would impose such enormous

11

negative ramifications on U.S. Policyholders who previously contracted directly with an alien insurer." *Id.* at PageID 2050.

The R&R cites two cases in support of this conclusion. In *ABN AMRO Bank, N.V. v. MBIA Inc.*, 17 N.Y.3d 208 (2011), the New York Court of Appeals permitted policyholders with MBIA Insurance company to sue it over its restructuring, even though the New York Superintendent of Insurance approved that restructuring. *Id.* at 224. The Court rejected that claim on the grounds that to so hold would mean that the Superintendent is "also the exclusive arbiter of all private claims that may arise in connection with [MBIA's] Transformation," which was not what the statute provided. *Id.* In *Vetter v. Security Continental Ins. Co.*, 567 N.W.2d 516 (Minn. 1997), the Minnesota Supreme Court held that an insurance company had not shown there was an effective novation of an insurance contract, so the original insurance company was still liable on that contract. (The original insurer had attempted to transfer all liability to a reinsurer.) The court observed that "[i]nsurance policies are contracts and unless there are statutory provisions to the contrary, general principles of contract law apply," and there were no applicable statutes that displaced contract law in that case. *Id.* at 521. Powell, in its Response, agrees with the R&R that the domestication "did not release General Accident/Aviva from liability" and argues that a novation would be required to accomplish that. Doc. 120, PageID 2094.

The Court finds Aviva's objections to the R&R's reasoning persuasive. As Aviva explains, "domestication and merger pursuant to New York Insurance Law is performed within clear statutory permissions and requirements specifically designed to replicate a merger between distinct corporate entities." Doc. 121, PageID 2108. The domestication statute exists to allow for reorganization of an alien insurer's U.S. activities into a domestic insurer. *Id.* at

12

PageID 2110. New York adopted this statutory scheme because it found it to be in the "best interests of . . . policyholders and creditors" given the impracticability of obtaining the consent of all policyholders and creditors in this situation. *Id.* (quoting Doc. 70-5 at PageID 1036 (March 16, 1951 Memorandum from N.Y. Superintendent of Insurance to N.Y. Governor)). The Court agrees with Aviva that the domestication statute is *not* in fact silent on the issue of the liability of an alien insurer following a proper domestication. This case, unlike one where an insurer has undergone a restructuring or one where the company has been sold to a reinsurer and given the "OK" by state regulators, constitutes a proper domestication of an insurer carried out in accordance with a statutory scheme promulgated specifically to protect policyholders, and as such, future liability that might redound to the former insurance company is cut off.

In making this point, Aviva effectively distinguishes the cases cited in the R&R. As the discussion above demonstrates, those cases are not directly relevant—they do not involve alien insurer liability after a proper domestication of its U.S. branch. *ABN AMRO* is closest to the mark, because it involves an insurer invoking regulatory approval to avoid liability following a reorganization. It's inapplicable, however, because it involved a challenge to the reorganization itself made shortly after that reorganization. Powell does not allege any impropriety in the domestication transaction, which took place more than forty years ago. And *Vetter* stands for a proposition with which no party disagrees: where there's no statute to the contrary, general principles of contract law govern. Here, the relevant statutory scheme displaces general principles of contract law.

To summarize, General Accident's proper domestication of its U.S. operations effectively transferred its U.S. liabilities—including on Powell's policies—to Potomac,

13

pursuant to New York Insurance Law. Powell does not challenge the propriety of that domestication transaction. For this reason, General Accident's successor Aviva is not liable on the policies at issue.

### IV. CONCLUSION

As the R&R aptly stated, this case is the result of Powell's search for "deeper pockets" after Potomac Insurance, now known as Bedivere, went belly-up. Doc. 118, PageID 2030–31. Powell assumed it had found deep pockets at Aviva, the successor to General Accident, because the U.S. branch of General Accident issued Powell's original policies. But General Accident effectively washed its hands of its U.S. operations in 1981, when it domesticated its U.S. operations. After careful consideration, the Court concludes that Powell's effort to recover from Aviva forty years after that proper domestication fails. Because Aviva is not liable on the policies, Powell has not stated a claim on which relief can be granted. Accordingly, Aviva's Objections are **SUSTAINED** and its Motion to Dismiss Powell's claims under Federal Rule of Civil Procedure 12(b)(6) is **GRANTED**.

**IT IS SO ORDERED.**

Dated: March 31, 2025

Hon. Jeffery P. Hopkins
United States District Judge